In the Matter of PEGGY VERGILIS et al., Appellants, v PLANNING BOARD OF VILLAGE OF FISHKILL et al., Respondents, and MID-HUDSON MEDICAL GROUP, Intervenor-Respondent. [674 NYS2d 717] —In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Planning Board of the Village of Fishkill which granted the application of the intervenor Mid-Hudson Medical Group for a special use permit, the petitioners appeal from a judgment of the Supreme Court, Dutchess County (Jiudice, J.), dated July 16, 1997, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with one bill of costs.

The respondent Planning Board of the Village of Fishkill (hereinafter the Planning Board) issued a special use permit and site plan approval to the intervenor Mid-Hudson Medical Group (hereinafter the Medical Group) approving the expansion of its existing building and parking facilities. The existing building is located in an area zoned partly residential and partly Local Historic Center—Small Business (hereinafter LHC-SB). A 40-space parking lot owned by the Medical Group was located across the street in an area which was also zoned

residential (hereinafter the Jackson Street site). Under the Village of Fishkill Zoning Code, a medical clinic is a use permitted as of right in a LHC-SB zone, but requires a special use permit in a residential zone. The special use permit issued by the Planning Board included approval to expand the parking lot on the Jackson Street site to 72 spaces, based on a finding that it would be "impractical and undesirable" to provide all parking spaces on the same lot as the building.

The petitioners contend that the special use permit should be annulled insofar as it allowed the Medical Group to expand the parking lot on the Jackson Street site. Pursuant to Village of Fishkill Zoning Code § 171-90, a parking lot may be situated on a site separate from the building it serves if the Planning Board determines, as it did here, that it is impractical to provide parking on the same lot. Village of Fishkill Zoning Code § 171-90 further provides, however, that "in no event shall such parking and loading spaces for a nonresidential use be located in any residence district". The petitioners contend that, since the Jackson Street site was located in a residential district, and the parking lot was a "nonresidential use", the Medical Group was required to obtain a use variance from the Zoning Board of Appeals, rather than a special use permit from the Planning Board, in order to expand the number of parking spaces.

The Planning Board's determination to issue a special use permit for the Jackson Street site was based, in part, on a less-restrictive interpretation of Village of Fishkill Zoning Code § 171-90 than that urged by the petitioners. Under the interpretation relied upon by the Planning Board, accessory parking would not constitute a "nonresidential use" as long as the dominant use of the site was permitted in a residential zone. In other words, since a medical clinic was a use authorized by a special use permit in a residential zone, the accessory parking for that clinic also would be authorized by a special use permit in a residential zone. The Planning Board treated the Jackson Street site as accessory parking for the medical clinic, inasmuch as the Medical Group's planned expansion included the use of a historic Carriage House located on that site as part of its facilities.

It is well settled that "the determination of the responsible officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence in the record" (*Matter of Cowan v Kern,* 41 NY2d 591, 598; *see also, Matter of Olivieri v Planning Bd.,* 229 AD2d 584). Furthermore, any ambiguity as to whether the term "nonresidential use" in

the Village of Fishkill Zoning Code § 171-90 excluded those authorized by special use permit in a residential zone was appropriately resolved in favor of the property owner (*see, Matter of Allen v Adami,* 39 NY2d 275, 277). We conclude that the Planning Board's interpretation of the zoning code was rational, and we find no basis in the record to set aside its determination. O'Brien, J. P., Sullivan, Pizzuto and Joy, JJ., concur.